No. 26,473.

JAMES H. WRIGHT, *Appellee,* v. W. F. HOPPER et al., *Appellants.*

SYLLABUS BY THE COURT.

MORTGAGES—*Release of Mortgagor—Creation of Relation of Principal and Surety—Reformation of Instruments.* A mortgagor had money on deposit in a bank to pay the debt at maturity. A person interested in the bank borrowed the money from the mortgagor, undertaking to pay the mortgage. This borrower paid half the mortgage debt and obtained an agreement for an extension on the remainder, by representing to the mortgagee that the mortgagor expected to pay the mortgage from money the borrower owed him. The mortgagee being in ignorance of the real facts accepted a writing executed by the borrower agreeing to pay the balance of the mortgage, with an increase of interest, in consideration of an extension. In an action by the mortgagee to foreclose, the mortgagor defended on the theory that the person above referred to as the borrower had become the principal debtor, and the mortgagor a surety, who was discharged by the extension granted to the principal without his consent. The defense is held untenable upon these considerations among others: The relation of principal and surety could not arise between the borrower and the mortgagor from agreements between themselves of which the mortgagee had no knowledge. Under the facts, which do not readily admit of a statement sufficiently brief for use in a syllabus, that relationship did not arise. The writing claimed to have resulted in an enforceable extension did not do so because it provided for payment at the original maturity of the mortgage and because it falsely represented the borrower to be the owner of the mortgaged land. A reformation of the writing with respect to the date of maturity would not promote equity. The agreement of the borrower to pay the mortgaged debt at maturity, with an increase in the rate of interest, although supported by a valuable consideration in the release of a part of the land from the lien of the mortgage, did not release the mortgagor from liability, even if the relation of principal and surety had been established, for the transaction could not affect the mortgagor otherwise than beneficially.

Appeal from Lane district court; ROSCOE H. WILSON, judge. Opinion filed February 6, 1926. Affirmed.

*J. S. Simmons, Stuart Simmons* and *Alva L. Fenn,* all of Hutchinson, for the appellants.

*C. W. Burch, B. I. Litowich* and *LaRue Royce,* all of Salina, for the appellee.

Principal and Surety, 32 Cyc. pp. 31 n. 50, 39 n. 24. Reformation of Instruments, 34 Cyc. p. 905 n. 17.

The opinion of the court was delivered by

MASON, J.: James H. Wright brought this action to foreclose a real estate mortgage executed to him by W. F. Hopper, who will be spoken of as the defendant, although others were joined with him. Hopper defended upon the ground that the plaintiff by entering into an arrangement under which he accepted one J. C. Hopper (not related to W. F. Hopper) as the principal debtor, transferring the defendant to the position of surety, and by extending the time of payment for one year, for a valuable consideration, had lost his claim against the defendant personally and against the land. The facts are not in controversy. They have been embodied in findings by the court, the correctness of which has not been challenged. Judgment was rendered for the plaintiff and the defendant appeals.

The mortgage was for purchase money and covered ten quarter sections. It secured a note for $15,000, bearing six per cent interest, payable semiannually, the principal falling due October 17, 1922. On May 11, 1921, the defendant, who had $15,000 on deposit in a bank at Sterling ready to take up the mortgage, wrote to the plaintiff saying he would like to pay $10,000 and have $5,000 renewed for three years. He testified he really did this for J. C. Hopper. The plaintiff answered May 18 saying he expected payment in full October 17. On September 23, 1921, J. C. Hopper wrote to the plaintiff: "I can raise about half of this money, as I owe W. F. Hopper and he expects me to pay him so he can pay you. Would you carry the other half for him?" It is to be noticed that this was not a proposal to carry the debt for J. C. Hopper. An answer was at once returned to the effect that if W. F. Hopper would pay half the mortgage the balance would be extended one year at eight per cent interest. Further correspondence was had between J. C. Hopper and the plaintiff, which resulted on October 26, 1921, in the payment of the accrued interest and half the principal and the execution by J. C. Hopper of a writing in which in consideration of an extension of time he agreed to pay at maturity the principal and a year's interest at eight per cent. As a part of the same arrangement the plaintiff released four sections from the lien of the mortgage.

It is argued that as a result of these transactions the plaintiff ac-

cepted J. C. Hopper as the debtor primarily liable, and in agreeing with him without the defendant's knowledge to an extension in consideration of an increased rate of interest, released his claim against the defendant and consequently against the land, which the defendant owned. We think the argument unsound. The negotiations for an extension of a part of the debt were begun by a letter from the defendant in his own name, but written in behalf of J. C. Hopper. It is true that J. C. Hopper in a letter of September 30 wrote:

"You understand I will become paymaster of this note. It would be my desire to fix your security and entirely release W. F. Hopper, if you would indicate to me what security you would accept and have it become my obligation. You know me, no doubt, very well, and I shall be glad to furnish you cattle paper or anything that will make you feel perfectly safe on the $7,500."

But the answer in behalf of the plaintiff was that—

"He would prefer to keep the security he now has for the $7,500 balance, or will accept first mortgage on other real estate equally good. . . . He does not wish to accept cattle paper."

And on October 17, the plaintiff himself wrote:

"Prefer to keep present security or will accept the land in sections one and twelve and release other four quarters on payment of half. Would like early settlement."

No other security was accepted, if any was offered. Moreover J. C. Hopper in a letter written October 21 used this language, clearly implying that he was acting for the defendant as well as himself and that they were to be equally liable:

"Your telegram of the 20th is before me, and Mr. W. F. Hopper is here also; we are ready to pay the $7,500 and have you release the four quarters of land, and give us an option for a year to pay the balance, with the privilege of paying any time."

As the matter was presented to the plaintiff the negotiation with him for an extension was begun by the defendant in person. J. C. Hopper was acting in the defendant's behalf as well as for himself, and his own interest in the matter grew out of the fact that he was indebted to the defendant, and the defendant looked to him for the money to take up the mortgage. This did not show a change of the defendant's obligation into that of a mere surety. The situation is not at all analogous to that presented where the purchaser of land assumes the payment of a mortgage as a part of the purchase price and the owner of the mortgage looks to him personally for payment

and thereby accepts him as the primary debtor, giving to the mortgagor the rights of a surety, including that of being released from liability in case of an enforceable extension of time being granted to the buyer without his consent.

J. C. Hopper was interested in the Sterling bank, and desired to make arrangements so that the $15,000 the defendant had on deposit there should not be taken out at once. He and the defendant entered into a deal by which the defendant lent the money to him and he agreed to pay the mortgage. The plaintiff, however, knew nothing of these matters, and cannot be deprived of his remedies under his note and mortgage by an arrangement between the defendant and J. C. Hopper which had not been brought to his knowledge.

The extension agreement signed by J. C. Hopper began with the statement that he covenanted that he was the legal owner of the land. The trial court held this to be a representation of that fact, which was relied upon by the plaintiff. In view of this the agreement on the part of the plaintiff to an extension of time, which was implied by his acceptance of 'the document, was manifestly not enforceable and did not have the effect to deprive him of his claim against the defendant or the land. Moreover the agreement specifically provided for the payment of six months' interest on April 17, 1922, and of the principal and the final installment of interest on October 17, 1922, the original date of maturity. This appears to have come about through a mistaken belief that the original note was due October 17, 1921, instead of on that day in 1922. In some circumstances there would doubtless be little difficulty in having the instrument reformed to accord with the actual intent of the parties, assuming that the defendant and J. C. Hopper would have wanted an extension at all if they had realized the mortgage as things stood had another year to run. But that would involve the invocation of equitable relief, and there would be no equity in a change in the document that would destroy the plaintiff's lien because the land did not belong to J. C. Hopper, the very person therein stated to be its owner.

The defendant suggests that even conceding there was no extension of time the plaintiff's acceptance of J. C. Hopper's agreement to pay eight per cent interest for one year effected the release of W. F. Hopper. We think otherwise. If the plaintiff saw fit to release four quarters of land from the lien of the mortgage, in re-

turn for the assumption by J. C. Hopper—not by the defendant—of an obligation to pay additional interest as well as the balance of the principal of the mortgage debt, we do not see how the defendant could lose anything on account of the transaction. And unless it changed his position to his disadvantage—exposed him to a loss he would not otherwise suffer—his liability would not be affected.

The judgment is affirmed.

BURCH, J., not sitting.